## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY JACKSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 18 C 5864** |
| **v.** | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **CIRCUIT COURT OF COOK COUNTY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Anthony Jackson ("Petitioner"), a detainee at the Cook County Jail, brings a *pro se* habeas corpus petition challenging the decision of a judge in the Circuit Court of Cook County to deny him bail. (R. 1, Pet.) For the reasons set forth below, the petition is denied.

Even though this case is still in the pretrial phase, it has a tortured procedural history. In 2013, Petitioner was charged with first degree murder in connection with the beating death of Sanchez Mixon. (R. 8-2, Resp. at 1.) The incident occurred on a Chicago Transit Authority train platform and was captured by two surveillance cameras. (*Id.*) Petitioner fled the scene but turned himself into police two days later and was subsequently identified in a lineup by eyewitnesses as the perpetrator. (*Id.*) Two additional witnesses viewed the lineup but were unable to make an identification. (*Id.* at 1-2.) On March 20, 2013, Judge Israel Abaya Desierto set Petitioner's bond at $500,000. (*Id.*) Petitioner posted $50,000 in cash and was released. (*Id.* at 2.)

Thereafter, the case was reassigned to Judge Stanley Sacks. (*Id.*) A jury trial commenced on January 12, 2015, and Petitioner was found guilty of first degree murder. (*Id.*) At that point, Judge Sacks revoked Petitioner's bond and he was taken into custody. (*Id.*) Before sentencing, Petitioner filed a post-trial motion alleging ineffective assistance of counsel. (*Id.*) While the post-

trial motion was still pending, the case was transferred to Judge James Linn. (*Id.* at 2.) After an

evidentiary hearing, Judge Linn in November 2016 concluded that Petitioner's counsel had

provided ineffective assistance and granted Petitioner a new trial. (R. 8-2, Tr. at 19.) Judge Linn

then ordered Petitioner to remain in custody without bond, stating, "I saw the video and I read

the record of his trial and the evidence is still substantial against him." (*Id.*)

Before the case could be retried, issues arose regarding Petitioner's new counsel, George

Jackson ("Attorney Jackson"), who is also Petitioner's brother. (R. 8-2, Tr. at 82.) In May 2017,

Attorney Jackson was held in direct criminal contempt for his conduct while representing

Petitioner in the criminal case. (*Id.*, Resp. at 3.) Judge Linn also ordered that Attorney Jackson be

disqualified from the case because he was "not capable of restraining himself and practicing law

legitimately."[1] (*Id.*, Tr. at 94.) Petitioner then filed a motion for a "supervisory order" with the

Illinois Supreme Court seeking to overturn Judge Linn's order disqualifying Attorney Jackson

from the case. (*Id.*, Resp. at 3.) On September 25, 2017, the Illinois Supreme Court denied

Petitioner's motion. (*Id.*)

Petitioner then filed a petition with the Illinois Appellate Court seeking to pursue an

interlocutory appeal of Judge Linn's order disqualifying counsel. (*Id.* at 4.) That request was

granted, and Petitioner's appeal is currently pending before the Illinois Appellate Court. (*Id.*) As

a result of Petitioner having been granted leave to pursue an interlocutory appeal, all proceedings

in the trial court have been stayed. *See* ILL. S. CT. R. 306(c)(5) ("If the petition is granted, the

proceedings in the trial court are stayed.").

---

[1] According to Judge Linn, while the parties were preparing for the retrial, Attorney Jackson "began . . . acting erratically, lacking civility, raising his voice, getting personally insulting to the Court and to the State's Attorney's Office," at which point "[t]hings got worse. They became more tangential and disjointed. . . . He filed a pleading that was racist, pornographic, meant to intimidate in the nature of hate mail. It had nothing to do with anything." (R. 8-2, Tr. at 91-94.)

During the pendency of these proceedings, Petitioner filed an emergency *pro se* motion with the Illinois Appellate Court seeking review of Judge Linn's bail determination. (R. 8-1, Mot. at 1-33.) He argued that Judge Linn had abused his discretion in denying him bail while he was awaiting a retrial because he was not a threat to the public and had complied with all bond requirements while he was out on bail during the original trial. (*Id.* at 2-5.) In January 2018, the Illinois Appellate Court denied Petitioner's motion. (R. 8-4, Ill. App. Ct. Order.) Petitioner then sought review by the Illinois Supreme Court, but that court denied his motion in May 2018. (R. 8-5, Ill. S. Ct. Order.) In June 2018, the Illinois Supreme Court denied Petitioner's emergency motion to "clarify" its earlier order denying him relief. (R. 8-6, Ill. S. Ct. Order.)

Thereafter, Petitioner filed the present petition claiming that he is being unlawfully held in the Cook County Jail without bond. (R. 1, Pet.) He makes lengthy arguments in his 82-page petition, but at bottom, his arguments are that Judge Linn unfairly denied him bail because he was not a flight risk or a danger to the community, and that Judge Linn failed to adequately articulate the reasons for denying him bail.[2] (R. 1, Pet. at 8-10.) Respondent filed an answer to the petition arguing that Judge Linn properly denied Petitioner bail given the nature of the offense and other factors. (R. 8, Answer.) On November 30, 2018, Petitioner filed a reply in support of his petition, arguing that he is entitled to be released on bond because he "respected all prior bond conditions" when he was out on bond during the original trial. (R. 10, Reply at 2.)

## ANALYSIS

Before turning to the petition, the Court must address Petitioner's pending motion for appointment of counsel. (R. 4, Mot.) Petitioner has no constitutional right to counsel in this proceeding. *See Johnson v. Chandler*, 487 F.3d 1037, 1038 (7th Cir. 2007) ("A petition for

---

[2] Petitioner asserts five separate grounds in his petition, but they are essentially reiterations of the same claim: that he should not be detained pending the retrial. (*See* R. 1, Pet. at 8-9.)

habeas corpus relief is not part of the criminal proceeding, and it is generally considered to be a civil case."); *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) ("[I]ndigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court."). Nevertheless, the Court has discretion to appoint counsel for a person seeking federal habeas relief when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). The Court will abuse its discretion in denying a request for counsel only "if, given the difficulty of the case and the litigant's ability, [the petitioner] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have . . . a reasonable chance of winning with a lawyer at his side." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (citation and internal alterations omitted).

In his motion, Petitioner does not provide any specific reason why he needs counsel in this case. (R. 4, Mot.) He states that he has completed some college coursework (*id.* at 2),[3] and his filings reflect that he is fully literate and capable of communicating with the Court. His petition is accompanied by numerous supporting documents and contains cogent arguments in support of his request for relief. As outlined below, his ability to obtain federal habeas relief prior to trial is extremely constrained, and there is nothing before the Court to suggest that Petitioner would have a "reasonable chance of winning" if this Court were to appoint counsel to represent him in this case. *Winsett*, 130 F.3d at 281. Under these circumstances, Petitioner's request for counsel will be denied, and the Court turns to the petition.

Because Petitioner is in pretrial custody, his only source of habeas relief is under 28 U.S.C. § 2241. *Jacobs v. McCaughtry*, 251 F.3d 596, 597 (7th Cir. 2001) (per curiam). Section 2241 allows a state prisoner to bring a habeas corpus petition challenging his pretrial detention,

---

[3] Petitioner asserts that he was studying computer programming at DePaul University and operating his own home repair business when the events underlying the criminal case occurred. (R. 1, Pet. at 21, 24.)

but this ability is constrained by the desire of federal courts not to "interfere with the judicial administration and process of state courts prior to trial and conviction[.]" *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 507 (1973) (Rehnquist, J., concurring).

An Eighth Amendment excessive bail claim is cognizable on habeas review, but in determining whether a state's bail determination is proper, "[a] federal court should neither substitute its opinion as to what an appropriate amount of bail should be nor decide what factor should be given the greatest weight[.]" *United States ex rel. Garcia v. O'Grady*, 812 F.2d 347, 355 (7th Cir. 1987). The Court is also not permitted or expected to conduct a "*de novo* bond hearing[.]" *U.S. ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1133 (7th Cir. 1984). Such a practice would not only place a significant burden on the federal court system, "but would also represent an unwarranted interference in the operation of the state's criminal justice system." *Id.* "Thus, the only issue to be resolved by a federal court presented with a habeas corpus petition that complains of excessive bail is whether the state judge has acted *arbitrarily* in setting that bail." *Id.* (citation omitted); *see also Smith v. Illinois*, No. 07 CV 7048, 2008 WL 4951232, at *5 (N.D. Ill. Nov. 17, 2008) ("To obtain habeas corpus relief due to excessive bail, the petitioner must show that the state court acted arbitrarily in setting bail.").

Based on the above, the only question before this Court is whether Judge Linn acted "arbitrarily" in denying Petitioner bail pending the retrial. *Fitzgerald* 747 F.2d at 1133. The Court concludes that he did not. Although Judge Linn's reasoning was not particularly lengthy, it is clear that he based his decision on a review of the evidence presented in the first criminal trial, including the video capturing the entire incident between Petitioner and the victim; Judge Linn

concluded that the record contained "substantial" evidence of Petitioner's guilt.[4] (R. 8-2, Tr. at 19 ("I saw the video and I read the record of his trial and the evidence is still substantial against him.").) Additionally, the record that the crime with which Petitioner is charged is a very serious one, and the jury's original guilty verdict was not vacated for lack of proof, but due to a procedural flaw in the proceedings. (*See* R. 8-2, Tr. at 17-19.) Since the time of the first trial, another attorney raised concerns with Judge Linn about Petitioner potentially suffering from mental health issues. (R. 8-2, Tr. at 89-90.) The record also suggests that Petitioner was disruptive and uncooperative with Judge Linn during a brief period that he represented himself following the original trial, resulting in Judge Linn prohibiting him from further self-representation.[5] (R. 1, Pet'r's Exs., Tr. at 51-52.)

In light of the record, and Judge Linn's greater familiarity with the facts of the case and with Petitioner himself, the Court cannot conclude that Judge Linn acted arbitrarily in deciding that Petitioner should be detained pending the retrial. Petitioner wishes that this Court would reweigh the relevant factors and make its own bond determination, (R. 1, Pet. at 22-25), but the Court is not permitted to do so. *O'Grady*, 812 F.2d at 355; *see also Miller v. Williamson Cty. Corr. Ctr.*, No. 14-CV-333-DRH, 2014 WL 1389629, at *5 (S.D. Ill. Apr. 9, 2014) (denying habeas petition where petitioner asked the court to "reweigh the evidence and reduce his bail" because "that sort of *de novo* review is inappropriate" on habeas review).

---

[4] Indeed, in the context of arguing that the state had tried to "bias" Judge Linn by showing him the video, Petitioner's own attorney conceded that the video was highly damaging, stating, "I've seen the video. In the video, what I saw, it wasn't a fight. It was a beating." (R. 8-2, Tr. at 45.)

[5] Records before the Court reflect that after the original trial, Petitioner underwent a psychiatric evaluation when another attorney who appeared briefly in the case—oddly enough, Petitioner's aunt— raised concerns about his mental health. (R. 8-2, Tr. at 89-90.) Although unclear, the record suggests that this evaluation process was not completed before the proceedings were stayed. (*Id.* at 90.)

Petitioner also points to a number of perceived state law irregularities, including that detention is not warranted under state law. (*See* R. 1, Pet. at 21-22.) As a point of fact, he appears to be incorrect in this argument, because Illinois law provides that bail can be denied where the defendant is subject to a potential life sentence, 725 ILL. COMP. STAT. 5/110-4(a), and life may be imposed for a murder that involves "exceptionally brutal or heinous behavior indicative of wanton cruelty[.]" 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(b). Petitioner is charged with beating a man to death on a train platform in broad daylight in front of several witnesses—conduct that has resulted in life sentences in other cases. *See, e.g.*, *People v. Gates*, No. 5-14-0061, 2016 WL 7422058, at *1, 5 (Ill. App. Ct. Dec. 21, 2016) (affirming life sentence for defendant found guilty of beating victim to death), *appeal denied*, 80 N.E.3d 4 (Ill. 2017); *People v. Laskowski*, No. 2-10-0594, 2012 WL 6965067, at *2 (Ill. App. Ct. Jan. 3, 2012) (affirming life sentence of defendant who killed victim by a "systematic and continuous beating"). But in any event, this Court has no authority to grant habeas relief based on errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (citation and internal quotation marks omitted)); *see also* 28 U.S.C. § 2241(c)(3) (providing that relief under Section 2241 is warranted if the applicant shows he is "in custody in violation of the *Constitution or laws or treaties of the United States*" (emphasis added)).

As a final matter, it appears that Petitioner may also be trying to assert a speedy trial claim in his petition. (R. 1, Pet. at 12.) Unlike his excessive bail claim, there is no indication that he exhausted a speedy trial claim in the state courts. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) (observing that common-law exhaustion rule applies to Section 2241 petitions); *United States v. Castor*, 937 F.2d 293, 296-97 (7th Cir. 1991) (stating that while Section 2241

petitioners seeking pretrial habeas relief are not subject to a statutory requirement of exhaustion of remedies, "federal courts nevertheless may require, as a matter of comity, that such detainees exhaust all avenues of state relief before seeking the writ"). To the extent the Court has authority to dispense with the exhaustion requirement, *see Richmond*, 387 F.3d at 604, it will not do so in this case given the lack of a record developed as to this claim and the general desire of the federal courts to avoid interfering in ongoing state criminal proceedings. *See Braden*, 410 U.S. at 489-92; *see also Cichon v. Templeton*, No. 99-4124, 2000 WL 1039321, at *1 (7th Cir. July 25, 2000) (affirming denial of habeas petition for lack of exhaustion where petitioner sought dismissal of indictment based on a speedy trial violation, because "[t]he Illinois courts, not the federal courts, should have the first opportunity to respond to and resolve his request"). The Court offers no opinion about the merits of any speedy trial claim Petitioner may have.

Therefore, the petition is denied. There is no need for the Court to consider whether to issue a certificate of appealability because this case arises under Section 2241. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000) ("[I]t is now well established that the [certificate of appealability] requirement does not apply to appeals in § 2241 cases.").

## CONCLUSION

For these reasons, the petition (R. 1) is DENIED. Petitioner's motion for appointment of counsel (R. 4) is DENIED.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: December 7, 2018**

8